Kirby K. EDWARDS, Appellant,

v.

UNITED STATES, Appellee.

No. 82–1592.

District of Columbia Court of Appeals.

Argued Nov. 10, 1983.

Decided Nov. 8, 1984.

Lois Hochhauser, Washington, D.C., appointed by the court, for appellant.

John E. Stevens, Asst. U.S. Atty., with whom Stanley S. Harris, U.S. Atty. at the time the brief was filed, Michael W. Farrell, and Carolyn J. Adams, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before NEBEKER, MACK and BELSON, Associate Judges.

NEBEKER, Associate Judge:

Convicted by a jury of possession of a controlled substance, heroin, D.C.Code § 33-541(a) (Supp.1984) appellant was sentenced to a one year term, suspended, and two years of probation. His appeal now before us charges error in regard to the remedy administered by the trial court when a government witness failed to produce, under 18 U.S.C. § 3500 (1982), notes made during the course of apprehending the appellant, and error in regard to the admission of certain testimony from an expert witness. We perceive no error and affirm.

**I**

According to testimony from prosecution witnesses, Officer Allen, posing as a potential narcotics purchaser, was approached by Francis Forman, one of appellant's codefendants. Forman offered for sale and Allen expressed interest in the purchase of narcotics. Negotiations ensued, climaxed by an exchange of thirty-nine dollars for one "quarter" (teaspoon) of white powder, understood by seller and buyer to be heroin. In the process of the negotiations and sale, Officer Allen met appellant and all three of his codefendants. Directly after Allen and the four parted company, Allen broadcasted a description of each codefendant[1] to an arrest team. At the receiving end of the broadcast, Officer Hassell, a member of the arrest team, jotted down notes on the descriptions. The three codefendants were apprehended directly thereafter. Appellant was arrested within one half hour of the sale. Officer Allen, who had met up with the arrest team after they apprehended the three codefendants, saw appellant walking on the street, identified appellant to the team and directed the team to arrest him. With the arrests, the police seized from appellant's codefendants, *inter alia*, thirty-nine dollars, whose serial numbers matched those of the bills held by Officer Allen prior to the sale, one packet of white powder, later tested to contain heroin, and nine other packets of white powder, also later tested to show heroin content.

Several prosecution witnesses were called at trial. Salient for our purposes, Officer Hassell testified but her testimony was stricken from the record, upon the request of defense counsel for appellant and codefendant Middleton,[2] because she

---

1. At trial Allen remembered having described the appellant as wearing a white T-shirt and blue jeans; it was June 21, 1982.

2. The jury was also instructed with the following standard missing evidence instruction:

The following instruction is given to you with respect to missing witness or missing evidence. It relates to the Government's failure to produce Officer Hazel's [sic] notes, and to Defendant Middleton's failure to produce either a witness or prescription regarding the Valium.

If evidence material to, or a witness who would have given material testimony on an issue in this case was peculiarly within the power of one party to produce but was not produced or called by that party, and its absence has not been sufficiently accounted for or explained, then you may, if you deem it appropriate, infer that the evidence or testimony would have been unfavorable to the party who failed to produce it or call the witness. However, no such inference should be drawn by you with regard to evidence which, or a witness who, was equally within the power of either party to produce, or whose testimony would have been merely cumulative or immaterial. [TR Oct. 12, 1982 at pp. 66–67; *see* Criminal Jury Instructions for the District of Columbia, No. 2.41 (3d ed. 1978).]

was unable to produce at trial the notes she had made before the apprehension of the defendants. Also at trial, testimony was admitted from two expert witnesses regarding, *inter alia*, the manner in which seized evidence, suspected of being a controlled substance, is safeguarded from tampering between the time of seizure and that of trial, and the manner of testing such substances to determine constituent parts, particularly heroin.

## II

■ Appellant first challenges the sanctions imposed by the trial court for the violation by the government of 18 U.S.C. § 3500 (1982) (the so-called Jencks Act), *i.e.:* Officer Hassell's failure to produce her notes. At trial she testified that she heard Officer Allen's broadcast description and made some notes based on it. Her testimony then turned to the identification of one of the codefendants, Miss Middleton. At this time counsel for codefendant Forman objected. The trial court conducted a Jencks hearing, with the jury excused. As a result of the hearing and with the concurrence of appellant's counsel, the trial court ruled that Officer Hassell's notes were Jencks material, failure to produce them at trial constituted gross negligence, and, pursuant to requests initiated by counsel for codefendant Middleton, the following sanctions were ordered: striking all of Officer Hassell's testimony regarding appellant's identification; and giving the jury the missing evidence instruction.

Appellant, having agreed with the trial court's findings that the notes were Jencks material and that gross negligence was committed, now charges that the appropriate sanction for this Jencks Act violation was to go beyond his request at trial and

strike Officer Allen's testimony. Appellant further argues that the sanctions imposed by the trial court were inadequate and constituted an abuse of the court's exercise of discretion, under *United States·v. Jackson*, 450 A.2d 419, 427 (D.C.1982) (per curiam). Although the government suggests that there is a lack of support in the trial record for the findings regarding whether the notes were Jencks material and whether their loss was a result of gross negligence,[3] its primary argument is that the trial court properly exercised its broad discretion in fashioning the sanction imposed.

Whatever force is carried by appellant's abuse of discretion argument, it is overcome by his failure to request at trial the sanction he now seeks on appeal. Trial counsel for codefendant Chichester asked for very broad sanctions: the Jencks violations warranted dismissal of all the defendants' cases. Counsel for appellant did not join in that position and later stated no objection to or dissatisfaction with the sanctions as they were announced to the defendants.

■ The law is replete with procedural devices that require timely assertions by litigants. *E.g.*, Super.Ct.Crim.R. 12. These requirements are designed to avail the court of the parties' positions and reasoning before rulings are made and possible harm results, *see United States v. Miranda*, 593 F.2d 590, 594 (5th Cir.1979), while these prods also, it is hoped, minimize "sandbagging." *Wainwright v. Sykes*, 433 U.S. 72, 89, 97 S.Ct. 2497, 2507, 53 L.Ed.2d 594 (1977). In this case appellant's counsel responded by moving only to strike Officer Hassell's testimony, interestingly in juxtaposition to another counsel's very drastic

---

**3.** From our review of the record, it appears that the trial court may have erred in finding the notes were Jencks material. *Moore v. United States*, 353 A.2d 16, 18 (D.C.1976) ("must be a continuous, narrative recording rather than mere selective notations or excerpts"); *see Strickland v. United States*, 389 A.2d 1325, 1328–29 (D.C.1978), *cert. denied*, 440 U.S. 926, 99 S.Ct. 1258, 59 L.Ed.2d 481 (1979); *Fields v. United States*, 368 A.2d 537, 542 (D.C.1977); *United States v. Anderson*, 366 A.2d 1098, 1109 (D.C. 1976). *But cf. United States v. Jackson, supra*, 450 A.2d at 425 ("mere fact that the notes are 'rough' does not defeat a Jencks claim"; inquiry should focus on content and circumstances of the writing). We need not resolve that issue, however.

motion to dismiss. Moreover, assuming, *arguendo*, that Officer Allen's testimony with regard to the broadcast identification of appellant should have been stricken, any such error was harmless. *See United States v. Bundy*, 153 U.S.App.D.C. 191, 192, 472 F.2d 1266, 1267 (1972); *Ninth Annual Review of Criminal Procedure*, 68 GEO.L.J. 279, 613 n. 2630 (1979). Officer Allen's identification of the appellant at his arrest was made independent of any knowledge by Allen of Officer Hassell's notes, thus rendering harmless any possible error. *Hardy v. United States*, 316 A.2d 867, 870–71 (D.C.1974); *Jones v. United States*, 343 A.2d 346, 352–53 (D.C.1975).

### III

■ Appellant also contests the admission of testimony from an expert witness, Caroline Cerini, a forensic chemist from the Drug Enforcement Administration. Cerini was certified by the trial court as an expert witness. She testified that she conducted several tests on the powder, notably a gas chromatography mass spectrometry analysis. The graphic results of this analysis were compared with standard graphs she commonly used to identify heroin. From this testing, she concluded that the powder sold contained 5.8 percent pure heroin and the powder seized from a codefendant's car contained 6.0 percent heroin. Appellant argues that since the standard charts were not introduced into evidence, her opinion was based on hearsay, or alternatively, it lacked the requisite factual basis in the evidence. The short answer to appellant's charge in this regard is found in *Jenkins v. United States*, 113 U.S.App.D.C. 300, 304, 307 F.2d 637, 641 (1962), which holds that reports customarily relied upon by experts but not entered into evidence can lay the foundation for an expert's testimony. *See Brown v. United States*, 126 U.S.App.D.C. 134, 142, 375 F.2d 310, 318 (1966), *cert. denied*, 388 U.S. 915, 87 S.Ct. 2133, 19 L.Ed.2d 1359 (1967); FED.R.EVID. 703. *Cf. Lee v. United States*, 383 A.2d 360, 362 (D.C.1978) (expert testimony not stricken despite minimal factual basis in the record).

Moreover, we are aware of our deferential standard on review regarding trial court expert testimony rulings. *Ibn-Tamas v. United States*, 407 A.2d 626, 632 (D.C. 1979). We see no error in this regard.

We perceive no error by the trial court and, accordingly, affirm.

*Affirmed.*

MACK, Associate Judge, dissenting:

With considerable regret I must say that, in my view, the majority opinion not only denies this appellant a statutory remedy, but further clouds an area of the law already suffering from an unfortunate lack of clarity and uniformity. In this case the trial court, after conducting a hearing for the purpose of considering Jencks Act requirements, specifically found that Officer Hassell's lost or destroyed notes were Jencks material, that Officer Hassell's failure to preserve those notes constituted "gross negligence," and that "some sanctions might be appropriate" to penalize the government for neglecting its responsibilities under the Act. Despite our unequivocal ruling in *Hardy v. United States*, 316 A.2d 867 (D.C.1974), that the Jencks "Act imposes its sanction on the testimony of the witness who gave the statement [Officer Allen in this case], rather than on the one who received it [Officer Hassell]," *id.* at 869–70, the trial court ordered Officer Hassell's testimony relating to the broadcast and descriptions stricken from the record.

Appellant contends, in this court, that the trial court exceeded its proper exercise of discretion by eliminating Officer Hassell's testimony rather than the testimony of Officer Allen, the government witness who broadcast the description to Hassell. The majority opinion concludes that because appellant did not object to the sentence fashioned by the court at trial, his abuse of discretion argument cannot now be heard on appeal. In my opinion, because the remedy afforded by the court was misdirected, it constituted a clearly

erroneous ruling, given the government's culpability for the loss or destruction of the notes. The court, having determined to invoke the Act's sanctions, erred in failing to strike the testimony of Officer Allen. I would, therefore, reverse.

The principal objective of the Jencks Act has been described as "enhancing the likelihood of truth by enabling the defendant to gain access to previous statements of witnesses and use them as desired to test the accuracy of the actual testimony in court given by the same witnesses." *United States v. Perry*, 153 U.S.App.D.C. 89, 94, 471 F.2d 1057, 1062 & n. 21 (1972) (citing *Campbell v. United States*, 365 U.S. 85, 92, 81 S.Ct. 421, 425, 5 L.Ed.2d 428 (1961); *see also Hardy v. United States, supra*, 316 A.2d at 869. In keeping with the purpose of the Act, a trial judge has an affirmative duty to see that a "defendant has access to previous statements of a witness to the fullest extent possible under the terms of the statute ...." *United States v. Perry, supra*, 153 U.S.App.D.C. at 95, 471 F.2d at 1063; *see also Williams v. United States*, 355 A.2d 784, 788 (D.C.1976). To further the ends of justice and the search for truth, the Act provides the trial judge with a "lever," in the form of sanctions, which the judge may pull if the government "elects" not to produce Jencks statements. *United States v. Perry, supra*, 153 U.S.App.D.C. at 98, 471 F.2d at 1066. The "lever" may be pulled, pursuant to the statute, in one of two ways: the court may either strike the testimony of the witness involved or declare a mistrial. *See* 18 U.S.C. § 3500(d) (1982). The direction in which the "lever" is pulled, as well as whether it is pulled at all, depends upon the sound discretion of the trial judge. *United States v. Augenblick*, 393 U.S. 348, 355, 89 S.Ct. 528, 533, 21 L.Ed.2d 537 (1969).

In the instant case, the problem is not that the trial court has abused its discretion; in balancing, as it did, the conduct of the government against the risk of prejudice to the defense, the court reasonably exercised the considerable discretion granted it under the Act. The record reveals that the court conducted this balancing process and concluded that the interest of justice would be furthered by penalizing the government in some fashion. Thus, the trial court was cognizant of its role as "special guardian" of the command of the statute and applied its provisions within the permissible scope of discretion granted. *See Campbell v. United States, supra*, 365 U.S. at 92, 81 S.Ct. at 425. As I view the case, therefore, the error of the trial court was *not* that it miscalculated in its determination that the appropriate sanction for the government's "gross negligence" was the exclusion of the identification testimony, but that it directed that sanction at the testimony of the wrong witness. *See Hardy v. United States, supra*, 316 A.2d at 869–70.

We recently stated that when a trial court examines the government's conduct in determining whether sanctions are appropriate, "[t]he degree of negligence involved is especially significant ...." *United States v. Jackson*, 450 A.2d 419, 427 (D.C.1982). This is true because "the policy of the statute, the quest for truth, is undercut as much by governmental negligence as by intentional acts of destruction." *United States v. Perry, supra*, 153 U.S.App.D.C. at 95, 471 F.2d at 1063); *see also Cotton v. United States*, 388 A.2d 865, 870 (D.C.1978). In recognition of the comparable negative effect that negligent and intentional "elections" have on the fair and just administration of criminal justice, this court in *Jackson, supra*, ruled that "[w]here the loss [of producible statements] is a result of bad faith *or gross negligence*, the trial court *must* exclude the witness' testimony." 450 A.2d at 427 (emphasis added) (citing *Johnson v. United States*, 298 A.2d 516, 520 (D.C.1972)). Accordingly, under our ruling in *Jackson*, once the trial court in this case went through the balancing process and determined that Officer Hassell was "grossly negligent" in failing to preserve her notes, it was *required* to exclude the testimony of

the witness involved.[1] The error of the trial court was in considering the Jencks statements in this case to be those of Officer Hassell, rather than those of Officer Allen, and thereby striking her identification testimony while leaving Officer Allen's identification testimony intact. Because the Jencks Act *only* permits the imposition of its sanctions on the "testimony of the witness who gave the statement, rather than on the one who received it," *Hardy v. United States, supra,* 316 A.2d at 870, the ruling was clearly erroneous.[2]

The majority, however, concludes that the government's "gross negligence" may be excused in the case at bar because appellant failed to request "at trial the sanction he now seeks on appeal." In their willingness to sustain this appellant's conviction, my colleagues once again end-run the Jencks Act to avoid its legislative mandate. This time we employ a waiver analysis which, in my view of the law, is inconsistent with the main objective of the Act, *i.e.,* the maximum truth in the courtroom. Moreover, the majority's rationale effectively transforms the judiciary's role in the overall scheme of the statute, reducing the trial judge's part from one of special custodian of the goal of the Act to one of merely an interested observer who will not comply with the mandate unless requested to do so.

Finally, one comment on the majority's precautionary alternative ruling, *i.e.,* its holding that the trial court's action, assuming it was misdirected, was harmless error in view of the "independent source doctrine." Assuming that this judicial engraftment on the Act is a viable one, in view of its incompatibility with the express wording of the statute (*see Fields v. United States,* 368 A.2d 537, 544–45 (D.C.1977)

(Mack, J., dissenting)), as well as its potential for rendering meaningless our repeated admonition that notes taken of initial descriptions of assailants be kept and produced (*Moore v. United States,* 353 A.2d 16, 19, *aff'd after remand,* 363 A.2d 288 (D.C. 1976); *United States v. Jackson, supra,* 450 A.2d at 425), I do not see how it could apply under the instant circumstances. I respectfully dissent.

---

1. Appellant concedes that a mistrial, the other sanction available under the Jencks Act, was inappropriate in this case because the notes are lost or destroyed and therefore would not be produced at another trial.

2. The fact that the trial judge gave, at appellant's request, a variant of the missing witness instruc-

tion does not alter my conclusion. Although such an instruction may be an appropriate sanction under limited circumstances, *see Williams v. United States, supra,* 355 A.2d at 788 n. 9, it clearly does not suffice where there has been a finding of gross negligence or bad faith. *See United States v. Jackson, supra,* 450 A.2d at 427.